## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

| | | |
|---|---|---|
| **HONEY E. MALOOF,** <br> 9468 Athol Road <br> Mardela Springs, MD 21837 | * <br><br> * | |
| *Plaintiff,* | * | CIVIL CASE NO.:_____ |
| v. | * | |
| **MARYLAND DEPARTMENT OF HEALTH** <br> 926 Snow Hill Road <br> Salisbury, MD 21804 <br>  Serve: Anthony Brown, Attorney General <br>        200 St. Paul Place <br>        Baltimore, MD 21202 | * <br><br> * <br><br> * <br><br> * | |
| *Defendant.* | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

Plaintiff Honey E. Maloof ("Mrs. Maloof") through counsel makes this Complaint against her former employer, Maryland Department of Health, an agency of the State of Maryland ("Department"). She asserts claims of disability discrimination, failure to accommodate and retaliation, pursuant to the Rehabilitation Act of 1973, 29 U.S.C. §709 et seq. Mrs. Maloof seeks declaratory and injunctive relief, an award of compensatory damages, and an award of attorneys' fees and costs.

### JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §1331 in that this action asserts violations of rights secured by the laws of the United States.

2. Venue is proper in this Court in accordance with 28 U.S.C. § 1391(b), as the events giving rise to Plaintiff's claims occurred in the District of Maryland, and there is no other district in which this action may be brought.

1

## PARTIES

3.     At all times relevant to this Complaint, Mrs. Maloof was employed by the Department as a Nurse Supervisor at Holly Center, a facility in Salisbury providing resident care to persons with developmental disabilities.

4.     The Department is an agency of the State of Maryland responsible for managing public health issues in Maryland. The Department receives Federal financial assistance to operate programs as contemplated by 29 U.S.C. § 794.

## FACTS COMMON TO ALL COUNTS

5.     The Department hired Mrs. Maloof as a Registered Nurse Supervisor at Holly Center on October 9, 2019. The position required her to supervise registered nurses who performed most of the facility's direct care nursing functions, and was thus largely sedentary.

6.     Throughout her employment with the Department, Mrs. Maloof met and indeed exceeded her employer's legitimate expectations, was positively evaluated, and was never disciplined.

7.     On June 11, 2020, Mrs. Maloof injured her left knee while pushing a medication cart at work. Her injury caused her permanent orthopedic impairment, eventually diagnosed as patellofemoral dysfunction.

8.     As a result of her workplace injury, Mrs. Maloof became unable to walk or stand for long periods, but could perform the core supervisory functions of her job without accommodation.

9.     Had the Department entered into an appropriate interactive process, it could have without undue burden or hardship relegated Mrs. Maloof to the sedentary functions of her job, which entailed primarily the supervision of floor nurses, who could have handled direct patient

care, pushed the medication cart and otherwise performed the physically demanding functions of which Mrs. Maloof was now incapable.

10. Instead, without excuse or justification, the Department insisted Mrs. Maloof continue to push the medication cart, and assigned her to provide direct patient care to a ward housing violent patients. Mrs. Maloof complied, under protest.

11. Predictably, on April 2, 2021, a patient assaulted Mrs. Maloof, striking her in the temple. The assault not only caused Mrs. Maloof a significant head injury, but moreover exacerbated her underlying orthopedic impairment.

12. Nonetheless, the Department continued to insist Mrs. Maloof perform physically demanding direct-care nursing functions. These functions were peripheral to Mrs. Maloof's supervisory job description, and could have been covered without burden or hardship by the floor nurses Mrs. Maloof supposedly supervised. Again, Mrs. Maloof complied, under protest.

13. Predictably, Mrs. Maloof's performance of physical nursing functions, in contravention of her doctor's orders, worsened her underlying orthopedic condition, eventually rendering her incapable of doing them.

14. On August 13, 2022, the Department fired her, disingenuously maintaining she could no longer perform the essential functions of her job. In reaching this denouement, the Department refused to enter into a meaningful interactive process to explore confining Mrs. Maloof to the sedentary functions central to her role as a supervisor, functions she indisputably could handle productively and without further accommodation.

15. The Department's specious claim that Mrs. Maloof could not perform the essential functions of her job was a mere pretext. In reality, the Department's decision to terminate Mrs. Maloof was substantially motivated by her orthopedic disability, which the Department regarded

as inconvenient, and by her unwelcome insistence she be accommodated. Thus, the denial of workplace accommodation to Mrs. Maloof and her subsequent termination were both discriminatory and retaliatory.

16. Following her termination, Mrs. Maloof diligently sought new employment, but could not find another job suitable to her qualifications on the Lower Eastern Shore where she resides until February 2023. Consequently, Mrs. Maloof went half a year without income following her wrongful termination, a hardship exacerbated by the Department's bogus requirement she take unpaid leave for three months before she was fired.

17. Significantly, in her new job, Mrs. Maloof is employed by a private institution in a position virtually identical to the one from which she was fired by the Department. Thus, the Department's claim she was physically unable to do the job is demonstrably false.

18. In addition to the loss of income occasioned by her wrongful termination, Mrs. Maloof lost state benefits, including retirement and health insurance, and incurred consequential damages as her family struggled to make do with the loss of her salary.

19. Moreover, as a direct and proximate result of her workplace mistreatment and ensuing termination, Mrs. Maloof suffered severe emotional distress accompanied by physical symptoms, as well as harm to her standing and character in the community.

## CAUSES OF ACTION

### COUNT I
### DISABILITY HARASSMENT
### ("HOSTILE WORK ENVIRONMENT")

20. The facts alleged above are incorporated by reference.

21. By forcing Mrs. Maloof to perform physically demanding tasks proscribed by her physician and tangential to her job description, the Department harassed Mrs. Maloof based upon her disability.

22. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Mrs. Maloof's employment, and proximately caused the harm, losses and damages she has alleged.

## COUNT II
## FAILURE TO ACCOMODATE

23. The facts alleged above are incorporated by reference.

24. The Department had notice of Mrs. Maloof's disabling orthopedic condition and could have accommodated it without undue burden or hardship by relegating Mrs. Maloof to the sedentary duties central to her position as a supervisor, and convening physically demanding direct-care functions using subordinate nurses.

25. However, the Department refused to do so without justification or excuse, and never embarked in good faith upon the interactive process that would have lead to a successful accommodation.

26. The Department's failure to accommodate Mrs. Maloof proximately caused the harm, losses and damages she has alleged.

## COUNT III
## WRONGFUL TERMINATION

27. The facts alleged above are incorporated by reference.

28. Mrs. Maloof's protests at being denied an accommodation and forced to perform physical tasks proscribed by her physician were objectively reasonable complaints of civil rights violations, and, as such, protected against retaliation.

29. Despite Mrs. Maloof's well-grounded objections, the Department refused to accommodate her, forced her to perform physically demanding and dangerous tasks and, when those tasks rendered her unable to perform them anymore, fired her on the self-serving theory she could no longer perform those tasks.

30. Mrs. Maloof's termination was wrongful, in that it discriminated against her for being disabled and retaliated against her for protesting her mistreatment.

31. The Department's wrongful termination of Mrs. Maloof proximately caused the harm, losses and damages she has alleged.

## PRAYERS FOR RELIEF

**WHEREUPON**, Mrs. Maloof prays this Honorable Court grant the following relief:

A. Enter a declaratory judgment the Department violated Mrs. Maloof's rights under the laws of the United States;

B. Enter a judgment in favor of Mrs. Maloof and against the Department for compensatory damages;

C. Assess reasonable attorneys' fees and costs of suit in favor of Mrs. Maloof and against the Department; and

D. Grant Mrs. Maloof such other and further relief as the nature of her cause may warrant.

_____
ROBIN R. COCKEY, Federal Bar No.02657
ASHLEY A. BOSCHÉ, Federal Bar No. 28800
Cockey, Brennan & Maloney, PC
313 Lemmon Hill Lane
Salisbury, MD 21801
410-546-1750
Fax: 410-546-1811
rrcesq@cbmlawfirm.com
bosche@cbmlawfirm.com
*Attorneys for Plaintiff*